RECEIVED
FEB -7 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JUSTISS OIL COMPANY, INC. | CIVIL ACTION NO. 1:07-cv-01745 |
| -vs- | JUDGE DRELL |
| T3 ENERGY SERVICES, INC., ET AL. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court are cross-motions for summary judgment by Plaintiff Justiss Oil Company, Inc. ("Justiss") (Doc. 82), and Defendant T3 Energy Services, Inc. ("T3"). (Doc. 86). Other motions for summary judgment have also been filed by these and other parties, but as the facts underlying those motions are distinct we do not address them here. Instead, for the reasons given below, we PARTIALLY GRANT and PARTIALLY DENY Justiss' motion for summary judgment (Doc. 82) and DENY that of T3. (Doc. 86).

## BACKGROUND

Justiss is the owner and operator of the "IPNH No. 1" oil well, located in LaSalle Parish, Louisiana. It filed the present action for damages arising out of a fracturing procedure gone awry, allegedly due to the failure of a defective well head component, a casing hanger, it had purchased from T3. It filed suit against T3 as the seller and manufacturer of the component, and against various other parties up the production chain.

That the product purchased from T3 was defective and failed is apparently not in dispute. Rather, the parties contest the source of the defect and T3's resulting liability, if any.

Justiss originally moved for summary judgment solely "based on Article 2524 of the

Louisiana Civil Code," the warranty of fitness for ordinary use. (Doc. 82, p. 1). T3 cross-moved for summary judgment on two bases. First, it argued that the warranty of fitness for ordinary use is not applicable and instead Justiss' claim under the Code appropriately sounded in article 2520, the "warranty against redhibitory vices." Second, T3 claimed that it is not liable under the other statute typically applicable in Louisiana products liability actions, the Louisiana Products Liability Act ("LPLA"), because (i) it was not the "manufacturer" of the defective product, (ii) it did not place the product "into trade or commerce," and (iii) any interaction it had with the product was not the proximate cause of Justiss' damage. (Doc. 86-1, pp. 2, 19).

Though Justiss did not discuss redhibition or the LPLA in its original motion, it claimed in its opposition and reply that it was likewise entitled to summary judgment on these grounds, based on the same underlying facts presented in its original motion. (Doc. 100). Both parties addressed all possible sources of liability in their subsequent submissions. We have reviewed all of these filings in rendering our decision here.

## ANALYSIS

### I. THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56, the Court will grant a party's motion for summary judgment only if:

> the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law . . . support[ing] the assertion by citing to particular parts of materials in the record.

Fed. R. Civ. P. 56. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. *Brock v.*

*Chevron U.S.A., Inc.*, 976 F.2d 969, 970 (5th Cir. 1992).

Where adverse parties have filed cross-motions for summary judgment, we "'review each party's motions independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Tidewater Inc. v. United States*, 565 F.3d 299, 302 (5th Cir. 2009) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 499 [5th Cir. 2001]). The filing of cross-motions "does not necessarily constitute an agreement to trial on a stipulated record." *John v. State of La. Bd. of Trs.*, 757 F.2d 698, 705 (5th Cir. 1985). Likewise, the fact that both parties argue there are no genuine issues of material fact does not mandate that a district court resolve the dispute without a trial. *Dotson v. City of Indianola*, 739 F.2d 1022, 1026 n.5 (5th Cir. 1984).

In the context of this case, Justiss will be entitled to summary judgment if it can meet the Rule 56 standard as to each of the required elements of any of its claim(s), while, for each claim, T3 need only negate one of those essential elements. See *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

## II. JUSTISS IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER THE LPLA

To prevail in a cause of action under the LPLA, a plaintiff must prove: (1) the defendant is a manufacturer of the product; (2) the damage occasioned was proximately caused by a characteristic of the product; (3) the damage arose from a reasonably anticipated use of the product; and (4) the characteristic made the product unreasonably dangerous. La. R.S. 9:2800.54(A); See *Jack v. Alberto-Culver, USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007). We find that the evidence in the Record satisfies the latter three elements, but that the evidence on the first is insufficient for a ruling as a matter of law.

### (1) It is an open question whether T3 is a "manufacturer" within the meaning of the Act

It is undisputed that T3 was not the actual manufacturer of the defective product. Rather, Justiss claims that T3 is its "apparent manufacturer." The doctrine of apparent manufacturer is one of long-standing in Louisiana case law and is codified in the LPLA as "a person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." La. R.S. 9:2800.53(1)(a).

Factually, Justiss alleges that T3 held itself out as the apparent manufacturer of the defective product both in its own dealings with Justiss, and more generally to the oil industry as a whole through its website. This evidence collectively could perhaps lead to the conclusion Justiss claims. However, as T3 points out, the evidence from T3's website was not properly authenticated during discovery and may not be considered by us here under the restrictions of Rule 56(c). Accordingly, we are limited to the affidavits and materials in the Record, which exclusively address T3's individualized dealings with Justiss.

According to that Record, T3 had put its name and logo on the product's packaging and mailing labels, had limited markings of its own - including a T3 inventory number, but no branding - on the product itself, and gave no indication anywhere that the product was manufactured by another party. As Justiss argues, courts have universally found that evidence of this quantity and type is sufficient to support a jury finding that the seller is an apparent manufacturer and to survive a summary judgment ruling to the contrary. See, e.g., *Media Prod. Consultants, Inc. v. Mercedes-Benz of North-America, Inc.*, 262 So.2d 377, 380 (La. 1972); *Louviere v. Ace Hardware Corp*, 915 So.2d 999, 1002 (La. App. 3 Cir. 2005); *Chevron USA, Inc. v. Aker Maritime, Inc.*, 2010 WL 1660092 (5th Cir. 2010); *Cooke v. Fairmont Hotel Co.*, 1993 WL 35146 (E.D. La. 1993). However, Justiss

presents no cases where a court ruled on summary judgment that such evidence is sufficient to establish apparent manufacturer status as a matter of law, and we found none in our own research. To the contrary, this determination seems to be a genuine question of fact, in this case a hotly disputed one, and quite material to the outcome of the case. Accordingly, on the limited evidence in the Record on this issue, we find summary judgment to be inappropriate.

On T3's defense that this element should fail also because it did not place the product "into commerce," we agree with Justiss that this defense is without merit. This clause of the LPLA distinguishes those engaging in commercial activity from those producing products for their own use, the Act not intending to encompass the latter. There is no support in the Act's text or history or in precedent to find that the seller of a product to a final user does not qualify under this clause, and we decline to make such a finding in the first instance here..

**(2) The damage occasioned was proximately caused by a failure of the product**

It is undisputed that the product failed, and that its failure was the proximate cause of Justiss' damages. T3 argues that this element of the LPLA is nonetheless not met because no specific alteration it made to the product caused the failure. This argument misunderstands the Act and confuses (lack of) proximate causation with the defense of comparative fault.

As should be clear from the existence of the apparent manufacturer doctrine discussed above, the requirement is not that a particular part manufactured by a particular defendant be defective. Such a rule would per se absolve all apparent manufacturers of liability, for, as their title suggests, they are only "apparent" manufacturers and thus never the "actual" manufacturers of the defective product or part. Rather, the proximate cause element requires only that a failure of a product of which a defendant can be considered a manufacturer caused the damages, irrespective of that

particular manufacturer's contribution to the defect.

Nonetheless, as discussed below, the point raised by T3 about its relative lack of actual culpability does provide it with a defense to damages, though on the basis of comparative fault - its share or allocation of fault for Justiss' damages - not lack of proximate cause. On the issue of proximate cause, the facts about the defective product causing Justiss' damages are undisputed. So, if T3 is found to be a manufacturer of the product, then summary judgment on this element is appropriate.

### (3) The damage arose from a reasonably anticipated use of the product

It is undisputed that the damage arose from an ordinary and anticipated use of the product. Indeed, T3 actually consulted with Justiss prior to the sale, chose the product for this specific use, and installed it at Justiss' drilling site. Accordingly, this element is likewise not at issue, and summary judgment on it is appropriate.

### (4) The characteristic made the product unreasonably dangerous

Finally, it is also undisputed that, due to its defect, "the casing hanger was clearly unreasonably dangerous." (T3's Memorandum in Support, Doc. 86-1, p17). Accordingly, we rule that summary judgment on this issue is appropriate.

### Conclusion

In all, the parties have presented undisputed evidence showing that Justiss is entitled to judgment as a matter of law as to elements 2, 3, and 4. As to the first element, whether T3 was an "apparent manufacturer" of the product within the meaning of the LPLA, there is some evidence in support of this proposition on the Record, and more which is not but which may be presented at trial. Regarding the evidence on the Record, we find that its quantity and type would support a jury finding

that T3 is an apparent manufacturer, and thus that it suffices to deny T3's summary judgment motion to the contrary. However, we also find that this evidence is insufficient to warrant a ruling as a matter of law for Justiss on this issue. Therefore, neither party is entitled to summary judgment on this element and it remains open for further adjudication.

## III. JUSTISS IS ENTITLED TO SUMMARY JUDGMENT UNDER CHAPTER 9 OF THE LOUISIANA CIVIL CODE

Justiss also argues for summary judgment under Chapter 9 of the Louisiana Code entitled "redhibition." It originally claimed solely under article 2524, the "warranty of fitness for ordinary use." T3 argued in opposition that the facts Justiss alleged actually corresponded to article 2520, the "warranty against redhibitory defects." In its response, Justiss adjusted accordingly and made a claim under both articles. This duplication is interesting but as explained below ultimately without consequence, for T3's liability may be properly adjudicated under both articles.[1]

### A. T3 is liable in redhibition under article 2520

Louisiana Civil Code article 2520 states the warranty against redhibitory defects as follows:

The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

---

[1] As discussed below, under which article liability arises could have consequences for the issues of preemption and damages, including comparative fault.

Article 2530 further restricts "[t]he warranty against redhibitory defects [to] cover only defects that exist at the time of delivery." See *Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685, 690-91 (La. 2008). Article 2521 similarly excludes "apparent" or evident defects. *David v. Thibodeaux*, 916 So.2d 214, 217 (La. App. 1 Cir. 2005).

As T3 argues persuasively, Justiss alleges that T3 sold it a defective product, and the defect caused it to utterly fail in the course of its ordinary use, making it effectively useless. The facts underlying these allegations are not in dispute. T3 sold the product to Justiss, and indeed specifically selected it on behalf of Justiss for the job at which it failed, and the product contained the defect when it left T3's possession. Accordingly, as none of Justiss' factual allegations relating to T3's liability are in dispute and these facts plainly constitute a breach of the warranty against redhibitory defects, we rule for Justiss that T3 is liable in redhibition under article 2520.

### B. T3 is likewise liable under article 2524 for a breach of the warranty of fitness for ordinary use

In addition or in the alternative, Justiss argues that T3 is liable under article 2524 for a breach of the warranty of "fitness for ordinary use." This article reads as follows:

> The thing sold must be reasonably fit for its ordinary use.
>
> When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose
>
> If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.

As above, the elements of this claim are clear, and the facts underlying it are undisputed. Specifically, Justiss need only prove (i) a sale, and (ii) that the item sold was not fit for its ordinary

use, or for a particular use about which the seller had reason to be aware. La. Civ. Code art. 2524; *Rey v. Cuccia*, 298 So.2d 840, 843 (La. 1974). "If he proves that the product purchased is not reasonably fit for its intended use, it is sufficient that he prove that the object is thus defective, without his being required to prove the exact or underlying cause for its malfunction." *Rey*, 298 So.2d at 843 (citing, e.g., *J.B. Beaird Co. v. Burris Bros.*, 44 So.2d 693 [La. 1949]); *Dixon Enterprises, Inc. v. Restaurant Prods., Inc.*, 389 So.2d 859, 861 (La. 4 Cir. 1980). Both parties concede that, factually, these elements are met. So, we have no trouble finding that claims pled under this article are viable, and that Justiss has recovery rights "governed by the general rules of conventional obligations." La. Civ. Code art. 2524.

T3's only defense on this point is that, as Justiss' claim arises under the warranty against redhibitory vices, it cannot also arise under the warranty of fitness for ordinary use. In other words, it argues that the two articles must be mutually exclusive. It relies almost solely for this contention on a single Louisiana appellate court case, *Cunard Line Ltd Co. v. Datrex, Inc.*, 926 So.2d 109 (La. App. 3 Cir. 2006).

We disagree with both this contention and T3's interpretation of *Cunard*, for several reasons. First, aside from *Cunard*, the rest of Louisiana's jurisprudence in this area does not support T3's position. (Doc. 100, pp. 8-9) (recounting numerous cases finding that a redhibitory defect breached the warranty of fitness for ordinary use). Without Louisiana Supreme Court clarification on this issue, we are not reluctant to side with the overwhelming majority of Louisiana appellate courts.

Second, we do not consider reconciliation among Louisiana's appellate courts necessary or warranted here, because we likewise disagree with T3's interpretation that it extracts from *Cunard*, at least as applied to the case before us. Specifically, *Cunard* found such exclusivity between the

articles necessary because they gave rise to liability under different theories, and different prescriptive periods applied to each theory. Meanwhile, a Louisiana court confronting an action sounding in different theories of contract and tort will "usually apply the delictual prescription" of one or the other if it finds that the suit is more or actually "grounded in that theory." See *Kroger Co. v L.G. Barcus & Sons, Inc.*, 13 So.3d 1232, 1235 (La. App. 2 Cir. 2009). The court in *Cunard* faced precisely such a dilemma, where permitting the plaintiff to proceed on the contractually based warranty of fitness with its 10 year prescriptive period would have entirely vitiated the protections of Louisiana's comparatively brief one year prescriptive period under the warranty against redhibitory defects.[2] Accordingly, the court analyzed which theory better encompassed the facts underlying the plaintiff's claims. As it found that these facts more appropriately sounded in redhibition, it ruled that the more specific prescriptive period for that theory should apply.

Here we face no such dilemma, as Justiss has brought its claim within the prescriptive period for both theories. Accordingly, we find no reason to deem the two articles exclusive, nor otherwise not to apply the "well-settled" rule that "the same acts or omissions may constitute breaches of both general duties and contractual duties and may give rise to [actions in both tort and] contract." E.g., *In re St. Louis Encephalitis Outbreak in Ouachita Parish*, 939 So.2d 563, 566-67 (La. App. 2 Cir 2006). Based on that rule, Louisiana law has long held that, absent conflicting prescriptive periods, a plaintiff may assert claims under both theories and is not required to plead a single theory of his case. E.g., *Dubin v. Dubin*, 641 So.2d 1036, 1039-40 (La. App. 2 Cir. 1994). Further, when a person negligently performs a contractual obligation, he has committed an active breach of contract which

---

[2] The prescriptive period for this warranty can be longer, but the applicable circumstances were not present in this case.

may also support an action in tort. *Id.*; see also *Mercedes-Benz*, 262 So.2d at 380 (permitting a claim for a violation of the implied warranty of fitness due to an automobile's redhibitory defects); *Draten v. Winn Dixie of Louisiana, Inc.*, 652 So.2d 675 (La. App. 1 Cir. 1995) (permitting claims in both redhibition and the LPLA).

Accordingly, we do not find the fact of T3's liability under article 2520 a sufficient reason to deny its liability under 2524, or vice versa. Instead, we find that summary judgment under both articles, in Justiss' favor, is appropriate.[3]

## IV. CONSEQUENCES AND DAMAGES

### A. Justiss' damages cannot be determined

At this stage, neither Justiss' total damages nor T3's share of those damages can be assessed.

Justiss' total cognizable damages cannot be assessed for a variety of reasons. First, the categories of damage, such as economic loss and / or attorney's fees, to which Justiss is entitled vary based on which theory or theories of liability apply, the LPLA or one found in the Code. More importantly, the interaction between these theories depends principally on a question which we have ruled remains unsettled, whether T3 can be considered a "manufacturer" of the product, or otherwise shown to have had knowledge of the defect or to have acted in "bad faith." La. Civ. Code art. 2545;

---

[3] As both T3 and the court in *Cunard* note, this position gives rise to considerable overlap between the two warranties, specifically in all instances when a product fails in its ordinary use due to a redhibitory defect. This duplication is expected and not excluded by the explicit addition of the warranty of fitness to the Redhibition chapter of the Code. The commentary to the article, quoted by T3, states that the warranty gives a buyer a right of action "even if the product is free from redhibitory vices." "Even if" is not "only," either colloquially or in strictly legal terminology. A charge to "drive safely, even if drunk," does not mean a person can drive unsafely if sober. Similarly, a warranty of fitness for ordinary use "even if [the product is] lacking in redhibitory vices" does not mean that the warranty does not apply when a redhibitory vice is present. Finally, the commentary says that this article was not intended to change existing law, and prior Louisiana law gave a buyer of a defective product multiple yet distinct causes of action for damages, including under both of these warranties. E.g., *Mercedes-Benz*, 262 So.2d at 380.

La. R.S. 9:2800.53; See *Aucoin v. Southern Quality Homes*, 984 So.2d 685, 690 *et seq* (La. 2008) (discussing the relationship between the LPLA and redhibition, and the varying degrees of seller's liability under redhibition); see generally Larissa Telpner, *The Damage Carve-out of the Louisiana Products Liability Act: Are Manufacturers Potentially Liable for Warranty of Fitness?*, 70 La. L. Rev. 615 (Winter 2010) (discussing the interplay of articles 2520 and 2524 and the LPLA's preemptive provisions). So, at this point we cannot rule on the categories of damages to which Justiss is entitled.

We also find the value of each category to be, at this point, indeterminable, at least as a matter of law. Justiss alleges various amounts of losses in its filings but provides little evidence to back them up, and T3 contests them on both factual and legal grounds. Accordingly, we find that the issue of Justiss' total damages presents multiple open issues of fact and law and is not presently amenable to summary judgment.

### B. T3's allocation of fault also cannot be determined

Louisiana has mostly abolished solidary liability, so judgment on the damages issue would also require us to determine T3's comparative share of Justiss' damages. We find that this is a genuine and disputed issue of material fact that we cannot resolve at this time. La. Civ. Code art. 2323.

T3 indirectly raised this issue in its discussion of liability under the LPLA. It argued that, as it was arguably only the "apparent manufacturer" of the product its actions could not have caused the defect and ultimately Justiss' damages. As discussed, this assertion misunderstands the doctrines of both "apparent manufacturer" and proximate cause under the LPLA. It is relevant here, however, in determining comparative fault.

That there is a tension between a strict products liability regime like the LPLA and the principle of comparative fault has not gone unnoticed. See *Daly v. General Motors Corp.*, 20 Cal.3d 725, 731 *et seq.* (Cal. 1978) (discussing comprehensively the disagreement between the "responsible and respected authorities" on this topic; concluding that "the expressed purposes" of a strict products liability regime "would not be thwarted were we to apply comparative [fault] principles" and that their application would lead to "a more just result."). However, Louisiana law has long held that comparative fault may apply in strict products liability cases. *Bell v. Jet Wheel Blast, Div. Of Ervin Inds.*, 462 So.2d 166, 167 (La. 1985). Since Louisiana adopted its present comparative fault regime, such application is mandatory. La. Civ. Code art. 2323; e.g., *Holloway v. Midland Risk Ins. Co.*, 832 So.2d 1004, 1013 (La. App. 1 Cir. 2002).

The method for applying this doctrine in "apparent manufacturer" cases is best seen in the main case T3 discusses in its response memorandum, *Chevron USA v. Aker Maritime, Inc.*, 604 F.3d 888 (5th Cir. 2010). There, Chevron sued multiple "manufacturers" of a defective product. As discussed by T3, the court upheld a jury finding that a distributor of the product could be held liable under the LPLA as an "apparent manufacturer" because, it "could have informed [the buyer] that the bolts it was selling were not its bolts, but that it had resorted to bolts from an overseas manufacturer [but it] did not." *Id.*, at 899. More pertinent here, the court upheld the jury's allocation of fault, including 35% to the "apparent manufacturer" distributor and 65% spread among three other actual manufacturers, as a question of fact, not law, reviewable only as to whether "the evidence presented to the jury . . . is sufficient." *Id.* at 892.

Applying that rule here, as discussed, numerous genuine issues of material fact remain open concerning Justiss' total damages and T3's comparative liability for those damages, and multiple

additional alleged manufacturers remain in this suit as defendants whose comparative liability must likewise be determined. Accordingly, we find that this issue is not amenable to judgment as a matter of law at this time and instead is reserved for resolution by the trier of fact.

## CONCLUSION

For the reasons given above, considering the parties' cross-motions for summary judgment, we DENY that of T3 (Doc. 86) and PARTIALLY GRANT and PARTIALLY DENY that of Justiss. (Doc. 82). In particular, we have resolved many issues regarding T3's liability, but we consider its ultimate status as an apparent manufacturer under the LPLA or a manufacturer or seller in bad faith under the Code to be unclear, at least by the limited evidence properly before us here. Likewise, we find that the issue of damages, including both Justiss' total damages and T3's share of those damages, presents multiple disputed issues of material fact. Accordingly, we are unable to resolve them here, and they remain open for trial and / or further adjudication between the parties.

SIGNED on this 7 day of February, 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE